**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| **JESSE J. MOLYNEUX (IA) and JOHN STELLMACH (WI), Individually, and on Behalf of All Others Similarly Situated,** | ) ) ) ) |
| **Plaintiffs,** | ) **Case No. 10-cv-588 JAJ-TJS** ) ) |
| **v.** | ) ) **MEMORANDUM IN SUPPORT** |
| **SECURITAS SECURITY SERVICES, USA, INC.** | ) **OF PLAINTIFFS'** ) **EMERGENCY MOTION FOR** ) **A PROTECTIVE ORDER AND** ) **ADDITIONAL RELEIF** |
| **Defendant.** | ) ) |

Plaintiffs hereby move the Court to immediately authorize Plaintiffs to issue corrective notice and to bar Defendant from distributing and requiring an arbitration clause and release from the Plaintiffs in this case, including the opt-in Plaintiffs and the putative absent class members.

## I.     Introduction

Within the past couple weeks and after Plaintiffs filed their Rule 216(b) Motion for Conditional Certification, Defendant communicated with putative class members and dictated that they are now subject to an arbitration clause which retroactively divests this court of jurisdiction over their claims unless they affirmatively exclude themselves from the arbitration clause by contacting Securitas itself.[1]  Any putative absent class member who does not affirmatively call the Securitas number and say that he or she is suing Securitas will purportedly be barred from participating in this or any other class or individual suit against

---

[1] Defendant's issuance of notice to all currently employed officers is evidence that they are all similarly situated and that they should receive notice of this lawsuit as set forth in Plaintiffs' pending Rule 216(b) motion.

Securitas, and instead will be forced to file an individual arbitration to resolve any wage and hour claim.

The arbitration clause and release is self-executing. It applies whether or not a covered guard signs it or agrees with it. It is very unclear whether covered guards who are not presently within the scope of one of the pending class actions even have the option of opting out of it.

This court should immediately bar Securitas' dissemination of this purported arbitration clause and release to putative class members, invalidate it, and require the distribution of a corrective notice approved by the court for the following reasons, among others:

- it interferes with this court's jurisdiction over this case;
- it interferes with this court's ability to supervise communications with class members;
- the communications within and regarding the arbitration clause and release are incomplete and misleading; and,
- the arbitration clause is unenforceable for the reasons listed above and because it functions retroactively, as a release of claims.

For all the above reasons and because this Court has supervisory authority over Defendant's communications with putative class members, Plaintiffs respectfully request that this Court enter an order: 1) invalidating the arbitration clause and release; 2) prohibiting Defendant from communicating with represented Plaintiffs about the subject matter of this litigation; 3) directing Defendant to provide names, addresses and telephone numbers of all putative class members who

were sent the arbitration clause and release; 4) authorizing Plaintiffs to issue corrective notice approved by the Court at Defendant's expense; 5) directing Defendant to provide Plaintiffs with all materials sent to or received from opt-in Plaintiffs and putative class members; 6) ordering Defendant to identify whether any in-house or litigation counsel were involved in seeking arbitration clause and releases; and, 7) for whatever other relief this Court deems appropriate.

## II.   Background

On Friday June 17, 2011, Plaintiffs' counsel learned that Defendant had sent a purported "Dispute Resolution Agreement" (hereinafter "Class Release") to its currently employed security officers. (*See* Ex. A)

Amongst other things, the Class Release seeks to release putative class members' rights to a trial as well as their rights to participate in a class, collective or representative action. (*See* Ex. A at 1-2)  The Class Release goes on to state that the release shall apply to thirteen (13) wage and hour cases pending across the country. [2]

The Class Release however, is silent on the details of those cases and makes no mention that motions for class certification are pending in the *Holland; Linares; Hawkins; Molyneux* and *Williams* cases.[3]  The Class Release also purports to be effective without a valid signature from the officers themselves.  Specifically, the Release states: "By not opting out of this Agreement as set forth in Section 9 below, however, you will be giving up the right to represent others in litigation and the right to participate in any class, collective or representative action in a court of law, including the Actions enumerated above…" (*See* Ex. A at 3)

---

[2] This is additional evidence that officers are similarly situated and entitled to notice in this case.

[3] The communication also inaccurately states that the *Howard* case was filed on 1/20/09 and that the *Hawkins* case was filed on 5/12/08.

3

The arbitration clause and release is also vague, confusing, and written in legalistic language. While it identifies the *Molyneux* case by name, it does not contain any other information about, and would not allow a guard to determine whether he or she is a class member who is forfeiting rights. A number of its provisions are stated to apply or not apply depending on a subsequent determination of applicable law. For example, whether a security guard would have to pay for the cost of an arbitration including fees for the arbitrator is made dependent on what would later be decided to be the applicable law. No rules are specified for the arbitration and the description of the method by which an arbitrator would be appointed is, at best, ad hoc: if the parties cannot agree on an arbitrator – and there is no provision for an initial list from which one would be chosen – the parties are instructed to file a lawsuit and ask the court to appoint an arbitrator. As a result, the arbitration agreement itself bizarrely requires court intervention in order to even commence arbitration. The only apparent rule in the arbitration is that there can be no class actions.

Guards who are within one of the specifically identified class action lawsuits are instructed to follow the procedures in paragraph 9 in order to opt out of the agreement if they so wish. However, paragraph 9 does not contain any opt-out procedures; those are contained in paragraph 8. Moreover, although guards are assured that it is against company policy to retaliate against them if they opt-out of the agreement, these lawsuits are, themselves, about how Securitas refuses to follow its written policies. This assurance would be cold comfort to any guard who wished to opt out.

## II. Argument

Courts have supervisory authority over a Defendant's communications with

putative class members. Fed. R. Civ.P. 23(d). Indeed, "because of the potential for abuse, a district court has both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 100 (1981); *See also Hoffman-LaRoche, Inc., v. Sperling,* 493 U.S. 165, 170 (1989) ("We have recognized that a trial court has substantial interest in communications that are mailed for single actions involving multiple parties.")

### 1.     Unilateral Communications By Defendants With Putative Class Members Are Improper

Courts have long recognized the impropriety of communications by defendants with putative class members, especially where the goal of such communications is relinquishment of the class members' rights. Although Defendant will undoubtedly characterize its communications with Plaintiffs and putative class members as an update to its employment policies, it is in reality, an attempt to exclude putative class members from this case.

In *Kleiner v. First National Bank*, 751 F.2d 1193, 1199, 1206 (11th Cir.1985), the Eleventh Circuit invalidated a campaign to solicit opt-outs from a class action suit, finding that the solicitations were coercive and interfered with the court's power to supervise the suit:

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable. *See Zarate v. Younglove,* 86 F.R.D. 80, 90 n. 13 (C.D.Cal.1980). Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an "afterthought." *See* Opinion of the district court at 36. In this case, the carefully constructed edifice of check and countercheck, notice and reply, was obliterated when the telephones were lifted from their cradles. The Bank's actions obstructed the district court in the discharge

of its duty to "protect both the absent class and the integrity of the judicial process by monitoring the actions before it." *Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 331, 100 S.Ct. 1166, 1170, 63 L.Ed.2d 427 (1980); *see In re Air Crash Disaster,* 549 F.2d at 1012 n. 8; 2 H. Newberg, *supra,* at 1189. The Bank's subterfuge and subversion constituted an intolerable affront to the authority of the district court to police class member contacts. Accordingly, we hold that the trial court had ample discretion under Rules 23(b)(3) and 23(d) to prohibit the Bank's overtures.

751 F.2d at 1203 (footnote omitted).

Similarly, in *O'Brien v. Encotech Construction*, the defendant sent out a notice seeking to release putative class members' claims. The Court ruled that:

> Defendants' conduct, in unilaterally soliciting releases, with no notice to plaintiffs' counsel or the court, seriously threatens the court's ability to handle this case in a fair and efficient manner. Defendant is seeking to have class members of the putative class relinquish rights they don't know they have, the effect of which will be to plunge this court into collateral proceedings regarding the enforceability of these waivers. There is no justification for injecting chaos into what should be an orderly process. At minimum, defense counsel should have provided Plaintiffs' counsel and the court with notice of the communication defendant sought to distribute concerning this action.

(*See* Order attached as Ex. B)  Like the defendant in *O'Brien*, Securitas here has unilaterally solicited releases from putative class members that would prohibit them from participating in this case.  Additionally, Securitas has failed to involve Plaintiffs' counsel or even notify the Court about its pre-certification communication with putative class members.   There is no justification for Defendant's unauthorized communications. Accordingly, this Court should order the relief requested by Plaintiffs.

Noticeably absent from the Arbitration clause and release is any mention of the pending motion for conditional certification or of putative class members' rights to participate in this case.  These failures illustrate the need for immediate judicial intervention to safeguard the rights of putative class members; indeed, these putative class members have an ongoing employment relationship with Defendant that renders

6

any communication from Securitas inherently coercive and provides such a potential for abuse as to require, as a matter of law, some oversight by the Court regardless of the communication's content or substance. *Bublitz v. E.I. DuPont de Nemours & Co.*, 196 F.R.D. 545, 548 (S.D. Iowa 2000) (citing *Abdallah v. Coca-Cola Co.*, 186 F.R.D. 672, 678 (N.D. Ga. 1999) (same)).

Further, the actual substance of Defendant's solicitation to putative class members here demands the Court's immediate intervention because it fails to provide any (let alone adequate) explanation of the existence of Plaintiffs' pending motions for conditional certification or notice that the recipient's legal rights are potentially impacted by their actions. In *Pollar v. Judson Steel Corp.*, for instance, the court restricted a defendant's ability to communicate with potential class members pre-certification following the defendant's publication of a notice that failed to disclose the pendency or scope of the class action addressing the same subject as the defendant's communication yet asked potential class members to make claims of discrimination with the company directly. The court explained that the defendant's omissions could cause confusion among potential class members regarding their rights and thus judicial intervention was needed; without intervention the intent and procedure of Rule 23 would be violated. 1984 U.S. Dist. LEXIS 19765, *1-2 (N.D. Cal. Feb. 3, 1984).

Additionally, judicial intervention is needed because Defendant's actions solicit releases that adversely impact the recipient's legal rights. In *Mevorah v. Wells Fargo Home Mortgage, Inc.*, the court found a potential to adversely impact legal rights a sufficient enough interest justifying judicial intervention. The court restricted the defendant employer's pre-certification communications with employees in part because

those communications went beyond the mere dissemination of information to the collection of data that might be used in court without full notice and adequate disclosure: "[T]his is a case that goes further than the employer disseminating information to its employees; it also involves the solicitation of signed declarations, thus committing employees who are potential class members to a set of facts that may be adverse to their interest and without their having been fully informed of all aspects of the case." 2005 U.S. Dist. LEXIS 28615, *16 (N.D. Cal. Nov. 17, 2005). Similarly, here, the Arbitration clause and release goes further than a mere communication or dissemination of information.

**3.      Defendant Cannot Impose An Arbitration Requirement At This Stage**

The same principles have been used to invalidate attempts to impose arbitration clauses while class action suits were pending. In *In re Currency Conversion Fee Antitrust Litigation*, the court invalidated arbitration provisions imposed on putative class members after suit was filed. In that case, the court noted that one-sided communications in the face of an on-going business relationship was coercive:

> "A unilateral communications scheme, moreover, is rife with potential for coercion. If the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." *Kleiner*, 751 F.2d at 1202 (internal quotations, citations and brackets omitted); *see also Hampton Hardware v. Cotter & Co*., 156 F.R.D. 630, 633-34 (N.D.Tex.1994) (holding evidence of letters discouraging participation in lawsuit, an ongoing business relationship between the parties and plaintiffs' dependence on defendant for supplies sufficient to prohibit all litigation-related communication prior to class certification); *Tedesco v. Mishkin*, 629 F.Supp. 1474, 1484 (S.D.N.Y.1986). Here, for example, the potential class consisted of cardholders who depend on defendants for their credit needs. These cardholders have no other realistic source of information regarding this litigation. Thus, in light of the cardholders' dependence on defendants for their future credit needs and information, this Court finds that Chase's and Citibank's actions are potentially coercive and improper. *See Ralph Oldsmobile*, 2001 WL 1035132, at *4 ("[A] finding of potential coercion is warranted here," because "the potential

class members depend upon the defendant for information, supplies, and credit."); *see also Kleiner*, 751 F.2d at 1203 ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal."); *Hampton Hardware*, 156 F.R.D. at 633 (noting that because the defendant and potential class members were involved in an on-going business relationship, there was a potential for coercion).

As a result, courts have banned similar communications without court supervision and prior approval:

> when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization. *See Hampton Hardware*, 156 F.R.D. at 632 (noting that defendant's communications affecting a class member's decision to participate in the litigation are improper); *see also In re Sch. Asbestos*, 842 F.2d at 682 n. 23 (listing cases where defendants "sought either to affect class members' decisions to participate in the litigation or to undermine class plaintiffs' cooperation with or confidence in class counsel").

The Currency Conversion court therefore invalidated the clauses:

> In sum, defendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation. Thus, this Court holds that those arbitration clauses may not be enforced because Chase and Citibank added them, without notice, after this litigation commenced.

Here the threat of coercion is even greater, because the class members are reliant on Defendant not just for credit or some other business relationship, but instead for their jobs.

### 4.     The Defendant Has Waived Any Right To Rely On An Arbitration Provision In This Case

By not having previously enacted an arbitration clause before any dispute arose, Securitas waived any right to rely upon one. Even if Securitas had enacted one before the litigation, it would be too late to reply upon one now. The Seventh Circuit has held that a party that litigated a case on the merits for ten months waived any right to raise an arbitration provision as a defense in *Cabinetree of Wisconsin, Inc. v. Kraftmaid*

*Cabinetry, Inc.*, 50 F.3d 388 (1995).  As Judge Posner wrote for the court, "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate."  *Id.* at 390.

Arbitrating the claims of some guards, while allowing others to proceed in court, such as Securitas seeks to do here, contradicts the policies behind arbitration.  As the Seventh Circuit noted,

> An arbitration clause gives either party the choice of an alternative, nonjudicial forum in which to seek a resolution of a dispute arising out of the contract. But the intention behind such clauses, and the reason for judicial enforcement of them, are not to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums.

*Id.*

If the defendant cannot raise an existing arbitration provision before this suit was filed and Plaintiffs had already moved for conditional certification, it surely cannot rely on the newly minted one as a defense at this stage of the proceedings.  As a result, the arbitration clause and release should be invalidated.

### III. Conclusion

Although it is understandable that Defendant would like to escape responsibility for its class-wide wage violations, there is no legitimate explanation for Defendant's unilateral efforts to see releases from putative class members.  Wherefore, Plaintiffs request that this Court enter an order:

1.   Invalidating the arbitration clause and release;

2.   Prohibiting Defendant from communicating with represented opt-in Plaintiffs about the subject matter of this litigation;

3.   Directing Defendant to provide names, addresses and telephone numbers of all putative class members who were sent the Arbitration clause and release;

4.      Authorizing Plaintiffs to issue a Court-approved corrective notice at Defendant's expense;

5.      Directing Defendants to provide Plaintiffs with all materials sent to or received from opt-in Plaintiffs and putative class members;

6.      Directing Defendants to identify whether any in-house or litigation counsel were involved in seeking arbitration clause and releases; and,

7.      For whatever other relief this Court deems appropriate.


Dated: June _29_, 2011               */s/ J. Barton Goplerud*

                                    J. Barton Goplerud
                                    Ryan E. Weese
    Hudson, Mallaney, Shindler & Anderson, P.C.
    5015 Grand Ridge Dr.
    Suite 100
    West Des Moines, Iowa 50265
    Telephone: (515)223-4567
    Facsimile: (515) 223-8887

    Ryan F. Stephan
    James B. Zouras
    STEPHAN ZOURAS, LLP
    205 N. Michigan Avenue
    Suite 2560
    Chicago, Illinois 60601
    (312) 233-1550
    (312) 233-1560 *f*
    rstephan@stephanzouras.com

    Jon A. Tostrud
    Cuneo Gilbert & LaDuca, LLP
    1901 Avenue of the Stars, 2nd Fl
    Los Angeles, CA 90067
    Telephone (310) 461-1620
    Fax (310) 461-1621

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed via the Court's CM/ECF system this 29th day of June, 2011, which sent electronic notice to the following:

Denise K. Drake
Daniel B. Boatright
Kellie A. Garrett
ddrake@littler.com
dboatright@littler.com
kgarrett@littler.com

ATTORNEYS FOR DEFENDANTS

_/s/   Lauren A. Silver_____

# EXHIBIT A

## SECURITAS SECURITY SERVICES USA, INC. DISPUTE RESOLUTION AGREEMENT

1. This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce. This Agreement applies to any dispute arising out of or related to Employee's employment with Securitas Security Services USA, Inc. or one of its affiliates, subsidiaries or parent companies ("Company") or termination of employment. Nothing contained in this Agreement shall be construed to prevent or excuse Employee from utilizing the Company's existing internal procedures for resolution of complaints, and this Agreement is not intended to be a substitute for the utilization of such procedures. Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement. The Agreement also applies, without limitation, to disputes regarding the employment relationship, any city, county, state or federal wage- hour law, trade secrets, unfair competition, compensation, breaks and rest periods, uniform maintenance, training, termination, or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act, Genetic Information Non-Discrimination Act, and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims (excluding workers compensation, state disability insurance and unemployment insurance claims). Claims may be brought before an administrative agency but only to the extent applicable law permits access to such an agency notwithstanding the existence of an agreement to arbitrate. Such administrative claims include without limitation claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board (www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/esa/ofccp). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration. Disputes that may not be subject to pre-dispute arbitration agreement as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203) are excluded from the coverage of this Agreement. This Agreement shall not be construed to require the arbitration of any claims against a contractor that may not be the subject of a mandatory arbitration agreement as provided by section 8116 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2010 (Pub. L. 111-118), section 8102 of the Department of Defense ("DoD") Appropriations Act for Fiscal Year 2011 (Pub. L. 112-10, Division A), and their implementing regulations, or any successor DoD appropriations act addressing the arbitrability of claims.

2. The Arbitrator shall be selected by mutual agreement of the Company and the Employee. Unless the Employee and Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If for any reason the parties cannot agree to an Arbitrator, either party may apply to a court of competent jurisdiction with authority over the location where the arbitration will be conducted for appointment of a neutral Arbitrator. The court shall then appoint an arbitrator, who shall act under this Agreement with the same force and effect as if the parties had selected the arbitrator by mutual agreement. The location of the arbitration proceeding shall be no more than 45 miles from the place where the Employee last worked for the Company, unless each party to the arbitration agrees in writing otherwise. If the Employee no longer resides in the general geographical vicinity where he or she last worked for the Company, the Employee and the Company shall agree to a location of the arbitration within 45 miles of where the Employee resides.

3. A demand for arbitration must be in writing and delivered by hand or first class mail to the other party within the applicable statute of limitations period. Any demand for arbitration made to the Company shall be provided to the Company's Legal Department [Securitas USA, Legal Department, 4330 Park Terrace Drive, Westlake Village, CA, 91361]. The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration.

4. In arbitration, the parties will have the right to conduct adequate civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator. However, there will be no right or authority for any dispute to be brought, heard or arbitrated as a class, collective or representative action ("Class Action Waiver"). Notwithstanding any other clause contained in this Agreement, the preceding sentence shall not be severable from this Agreement in any case in which the dispute to be arbitrated is brought as a class, collective or representative action. Although an Employee will not be retaliated against, disciplined or threatened with discipline as a result of his or her exercising his or her rights under Section 7 of the National Labor Relations Act by the filing of or participation in a class, collective or representative action in any forum, the Company may lawfully seek enforcement of this Agreement and the Class Action Waiver under the Federal Arbitration Act and seek dismissal of such class, collective or representative actions or claims. Notwithstanding any other clause contained in this Agreement, any claim that all or part of the Class Action Waiver is unenforceable, unconscionable, void or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator.

5. Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, the Company will pay the Arbitrator's and arbitration fees. If under applicable law the Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties in accordance with said applicable law, and any disputes in that regard will be resolved by the Arbitrator.

6. Within 30 days of the close of the arbitration hearing, any party will have the right to prepare, serve on the other party and file with the Arbitrator a brief. The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator, and no remedies that otherwise would be available to an individual in a court of law will be forfeited by virtue of this Agreement. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be permitted or required by law, as determined by the Arbitrator, neither a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of all parties. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration. The Arbitrator shall not have the power to commit errors of law or legal reasoning, and where allowed by applicable law of the jurisdiction in which the arbitration is held the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.

7. This Agreement is intended broadly to apply to all controversies hereafter arising out of or related to your employment relationship with the Company as well as an agreement to submit to arbitration any existing controversy arising from or related to your employment as is permitted under Section 2 of the Federal Arbitration Act. In some cases, claims have been made in court (non-arbitration) litigation on behalf of Company employees in which those employees desire to represent claims of other employees in class, collective or other representative actions (referred to as "Actions"). If you are a named party plaintiff, or have joined as a party plaintiff this Agreement shall not apply to those Actions, and you may continue to participate in them without regard to this Agreement. If you have retained counsel with respect to any claim that may be subject to this agreement you should consult that counsel. You may consult private counsel with respect to any aspect of this Agreement.

2

This Agreement, however, shall apply to all Actions in which you are not a plaintiff or part of a certified class. The Company is aware of the following Actions in which class or representative claims have been alleged, which generally involve employee claims for unpaid wages:

California: *Michael J. Holland, David Richardson and Geraldine Evans v. Securitas Security Services USA, Inc.,* filed 7/18/2008, Los Angeles Superior Court Case No. BC394708; *Walter Linares, Charles Dunaway and Sandra Blacksher v. Securitas Security Services USA, Inc.,* 6/26/2009; Los Angeles Superior Court Case No. BC432135; *Christine Brisco v. Securitas Security Services USA, Inc.,* filed 2/18/2010, Los Angeles Superior Court Case No. BC4165555; *Stephen Goodwin; William Wolff; Christopher Coffelt; Randall Der; Donna Forman v. Securitas Security Services USA, Inc.,* filed 9/25/2009, USDC, Eastern District of California Case No. 2:09-CV-02685-KJM-DAD; *Forrest Huff v. Securitas Security Services USA, Inc.,* filed 7/12/2010, Santa Clara Superior Court Case No. 110-CV-172614; *Marvin Melara v. Securitas Security Services USA, Inc.,* filed 10/26/2010, Los Angeles Superior Court Case No. BC448076; *Miguel Luna Candelas v. Securitas Security Services USA, Inc.,* filed 5/5/2011, Los Angeles Superior Court Case No. BC480352.

Florida: *Jean Loriston v. Securitas Security Services USA, Inc.,* filed 12/30/2010, USDC, Middle District of Florida Case No. 6:10-CV0-01956-PCF-KRS; *Kenisha Adams v Securitas Security Services USA, Inc.,* filed 5/23/2011, USDC, Middle District of Florida Case No. 1:11-CV-21858-PAS-KRS

Illinois: *Crystal Howard, Paul Galloway, Robert Newson and Alvan Young v. Securitas Security Services USA, Inc.;* filed on 1/20/2009, USDC, Northern District of Illinois Case No. 08-C-2746; *Stephanie Hawkins, Darsemia Jackson and Merija Wallace v. Securitas Security Services USA, Inc.,* filed 5/12/2008, USDC, Northern District of Illinois Case No. 09-C-3633

Iowa and Wisconsin: *Jesse J. Molyneux and John Stellmach (WI) v. Securitas Security Services USA, Inc.,* filed 12/9/2010, USDC, Southern District of Iowa Case No. 4:10-CV-00588-JAJ-TJS

Pennsylvania: *Frankie Williams and Kimberly Ord,* filed 12/10/2010, USDC, Eastern District of Pennsylvania Case No. 2:10-CV-07181-HB

If you are not a named plaintiff, have not joined as a plaintiff or are not part of a certified class in any of these Actions but would like to potentially participate in one or more of the Actions as a class member or plaintiff, you may opt out of this Agreement by following the procedure set forth in Section 9, below. By not opting out of this Agreement as set forth in Section 9 below, however, you will be giving up the right to represent others in litigation and the right to participate in any class, collective or representative action in a court of law, including the Actions enumerated above in which you are not a named plaintiff, have not joined as a plaintiff or are not part of a certified class.  If you choose not to opt out of this Agreement, you will be able to arbitrate whatever individual claims you have against the Company.  Whatever you decide, you will not be retaliated against, disciplined or threatened with discipline if you choose to opt out of this Agreement or choose not to opt out of this Agreement.  The choice is yours.

8. You may not wish to be subject to this Agreement.  If so, you may opt-out of this Agreement.  If you wish to opt-out, you must call the following toll free number 877-248-2721 in order to opt-out. In order to be effective, you must call the toll free number and opt-out within 30 days of your receipt of this Agreement. An Employee who timely opts out as provided in this paragraph will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to this Agreement. Should an Employee not opt out of this Agreement within 30 days of the Employee's receipt of this Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of this Agreement by

Employee and the Company. An Employee has the right to consult with counsel of the Employee's choice concerning this Agreement.

9. It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If any Employee believes that he or she has been retaliated against by anyone at the Company, the Employee should immediately report this to the Human Resources Department.

10. This Agreement is the full and complete agreement relating to the formal resolution of employment-related disputes. In the event any portion of this Agreement is deemed unenforceable, the remainder of this Agreement will be enforceable. If the Class Action Waiver is deemed to be unenforceable, the Company and Employee agree that this Agreement is otherwise silent as to any party's ability to bring a class, collective or representative action in arbitration.

4

ACKNOWLEDGMENT OF RECEIPT OF THE SECURITAS SECURITY SERVICES USA, INC.
DISPUTE RESOLUTION AGREEMENT

BY SIGNING BELOW, I AM ACKNOWLEDGING RECEIPT OF THE SECURITAS SECURITY
SERVICES USA, INC. DISPUTE RESOLUTION AGREEMENT, EFFECTIVE IMMEDIATELY.


Employee Name: _____

Signature: _____

Date:_____


Witness Name:

Signature: _____

5