IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - - - X
                      :
JESSE J. MOLYNEUX and     :
JOHN STELLMACH, Individually, :   Case No. 4:10-cv-00588
and on Behalf of All Others  :
Similarly Situated,        :
                      :
       Plaintiffs,    :
                      :
    vs.              :
                      :
SECURITAS SECURITY SERVICES  :
USA, INC.,           :   TRANSCRIPT OF HEARING
                      :
       Defendant.     :
                      :
- - - - - - - - - - - - - - - X


                    Fourth Floor Courtroom
                    United States Courthouse
                    123 East Walnut Street
                    Des Moines, Iowa  50309
                    Thursday, July 7, 2011
                    9:05 a.m.


BEFORE:  THE HONORABLE THOMAS J. SHIELDS, Magistrate Judge.


                  Terri L. Martin, CSR, RPR, CRR
                  United States Court Reporter
                  Room 189, U.S. Courthouse
                  123 East Walnut Street
                  Des Moines, Iowa  50309

APPEARANCES:

For the Plaintiffs:          J. BARTON GOPLERUD, ESQ.
                             Hudson, Mallaney, Shindler &
                              Anderson
                             5015 Grand Ridge Drive, Suite 100
                             West Des Moines, Iowa  50265

For the Defendant:           J. KEVIN LILLY, ESQ.
                             Littler Mendelson (CA)
                             2049 Century Park East, Suite 500
                             Los Angeles, California  90067

                             DANIEL B. BOATRIGHT, ESQ.
                             Littler Mendelson (MO)
                             1201 Walnut Street, Suite 1450
                             Kansas City, Missouri  64106

P R O C E E D I N G S

1

2              (In open court.)

3              THE COURT:  Please be seated.

4              Good morning, everyone.

5              We are in open court.  We are on the record in the

6  matter of Jesse J. Molyneux, et al., v. Securitas Security

7  Services USA, Inc.  This is Case No. 4:10-cv-00588.

8              We're here today for hearing on the plaintiff's

9  emergency motion for protective order and additional relief, and

10 I've read the motion, I've read the resistance, I've read a good

11 portion of the transcripts I've received, and I'm ready to hear

12 arguments.

13             Mr. Goplerud.

14             MR. GOPLERUD:  Your Honor, if I may, due to a

15 scheduling conflict, would the court allow Mr. Zouras to appear

16 by phone?  He is on your conference call at this time.

17             THE COURT:  All right.  Mr. Zouras.

18             MR. GOPLERUD:  We'll need to dial him, Your Honor.

19             THE COURT:  Oh, I though he was already on it.

20             MR. GOPLERUD:  He is on it.  I believe we need to call

21 him.

22             (Pause.)

23             MR. GOPLERUD:  If the court prefer, I think --

24             THE COURT:  Is he on the district's Meet-Me

25 Conference?

1              MR. GOPLERUD:  Yes, Your Honor.

2              THE COURT:  Okay.  Do you know that number?

3              THE CLERK:  I don't.

4              THE COURT:  I think it's 284-6224, and then dial that

5     and we'll get the code.  I'll give you the code.

6              THE CLERK:  We don't have a star phone in here.

7              THE COURT:  Oh, boy --

8              MR. GOPLERUD:  If you would prefer, I will go ahead

9     and address the issue.

10             THE COURT:  I think you better.

11             MR. GOPLERUD:  That's fine, Your Honor.  I understand.

12    We need to get directly to the point.

13             Your Honor, the only thing I really have to do is

14    summarize what Judge Johnson has previously done.  One of the

15    issues which has not been addressed in the briefing and we have

16    researched, we believe that one of the issues that applies in

17    this case is issue preclusion.  As this court has recognized

18    most recently in a case last year by Judge Jarvey, offensive

19    issue preclusion certainly could apply to this case and the

20    issues.  We've got the unique circumstance of not only having

21    been the identical parties, the identical notice but the

22    identical issues of correspondence with the putative class and,

23    oddly enough, the exact same attorneys and law firms involved.

24             So, first and foremost, we believe that the same joint

25    corrective notice can and should be issued that was issued in

1  the California case.

2          But as important, as the court has noted out there,

3  the notice that was sent out doesn't adequately advise the

4  putative class members about whether or not the court is going

5  to conditionally certify an issue of notice.  It doesn't tell

6  them what the case is really about other than unpaid wages, and

7  those people can be refused if they simply receive their

8  paychecks and think they're getting paid for their shift time,

9  not for their pre shift time, post shift time, uniform

10  maintenance as we've alleged in our collective action, rule 23

11  action.  And it doesn't advise them that they have an

12  opportunity to opt into our current case right now.  It doesn't

13  give them opportunity to seek advice of counsel for no charge.

14  It finally doesn't address, I don't believe, the rule 23 issue

15  because we filed a hybrid action.  We filed a collective FLSA

16  action, along with rule 23, and I think the notice is inadequate

17  to that as well.

18          But, Your Honor, I don't want to belabor the issue

19  other than to say that this court has addressed a similar matter

20  about 11 years ago in the Bublitz DuPont matter, and in that

21  case, as Your Honor will recall, one of the issues was pre

22  certification decision communication with class members, and in

23  that case the court determined that, you know, one of two

24  things.  There was going to be communication by defense counsel

25  to them, but if they were going to do it, they were going to get

1  the same contact information and names to plaintiff counsel.

2          But in this case, while that idea is possible, I think

3  because of the 30-day time period that is running, that's not

4  possible, whereas a joint notice as was done in California is

5  the only timely way to take care of the action in this matter.

6          So, with that, nothing further.

7          THE COURT:  All right.  Mr. Boatright.

8          MR. LILLY:  Thank you, Your Honor.  Kevin Lilly on

9  behalf of --

10          THE COURT:  I'm sorry; Mr. Lilly.

11          MR. LILLY:  Yes.  First of all, thank you, Your Honor,

12  for allowing me to argue.  I don't usually get questions this

13  interesting as a labor lawyer or employment lawyer.

14          There are two issues before the court that really need

15  to be analyzed separately.  One is, because the plaintiffs asked

16  in this motion and not in the California motion, plaintiffs

17  asked for substantive changes in the contract, the arbitration

18  agreement, dispute resolution program, and that is a different

19  question.  That goes to what AT&T Mobility versus Concepcion

20  holds, that under the Federal Arbitration Act that contracts for

21  arbitration must be enforced according to their terms, including

22  issues of contract formation.

23          So with respect to the remedies being sought by the

24  plaintiffs, which is withdrawal of the dispute resolution

25  program, voiding the dispute resolution program, to do that now

1  would get us into what I think would put the court and the

2  parties squarely against the holding in Concepcion.

3      The second issue is an issue of notice, and we

4  recognize, and it's stated in our papers, that the court

5  obviously has obligations to make sure that persons who might be

6  interested in litigation are properly noticed, and that's a

7  different question, also a somewhat difficult question because

8  under the Eighth Circuit and under Hoffmann-LaRoche, the court

9  must -- on the one hand, it must permit first parties have free

10  speech rights to speak with an uncertified class or, in the case

11  of an FLSA collective action, persons who aren't even parties to

12  the case.  There's substantial case law, for example, that the

13  parties have the right to go out and settle claims entirely with

14  noncertified parties.

15      So in this case I think the court needs to analyze it.

16  In the California case, I do not believe -- I was there for the

17  hearing, including both on the record and off the record

18  discussions, and the court specifically said, I am not going to

19  change the notice period.  I am not going to order the parties

20  to increase, for example, the time notice given.

21      The court did make a decision to get notice out, and

22  as a practical matter, in California I have to explain where the

23  case was.  In that case, the case had been filed about two years

24  ago, in that notice had already gone out to the class or at

25  least the class had been given the opportunity -- to protect

1  their privacy rights in California, there's a practice called

2  pioneer notice where you send out -- you understand that.

3       And so there was already a list and there was always a

4  claims representative company that had the list, so it's very

5  possible to get this notice out to the class, and the judge

6  ordered that, a sensible decision so far as it goes, but the

7  judge did not make any changes in the arbitration agreement

8  which -- and I actually had an interesting discussion with the

9  judge which was off the record and not reflected in the record.

10  I indicated that for the court to order changes in the agreement

11  would place the court's authority in opposition to Concepcion.

12  Concepcion says you must enforce agreements to arbitrate

13  according to their terms unless they're under the general law of

14  unconscionability as it would apply to any contract, then the

15  agreement is unconscionable.

16       Now, that's a decision that nobody is waiving.  That

17  argument can be made at any time in this litigation.  So that --

18  so, in my mind, to the extent that plaintiffs request any

19  changes in the agreement, any changes in the notice period,

20  changes in the terms of the agreement, ordering it to be

21  withdrawn, all of that would be something that would place

22  plaintiffs against definitive recent Supreme Court authority.

23       So we go to the issue of notice.  In terms of notice,

24  we've offered what we think is a good alternative.  Unlike in

25  the California case, we have a federal collective action where

1  before Your Honor there is a motion asking that the class be

2  given notice, and in a very short period of time, Your Honor is

3  going to make the decision as to who should get notice of this

4  case, how broad should this case be, should it extend to the

5  State of Wisconsin or should it just be limited to the State of

6  Iowa.

7         In that case, that is the appropriate time to give

8  whatever notice is required, and my client recognizes that.  My

9  client wants to be heard on that issue of notice because we

10  believe, frankly, the motion for conditional certification is

11  extraordinarily weak and, frankly, when the court sees it, we

12  believe we have a strong argument that no notice should issue,

13  that this is an issue about four employees at a discrete site.

14  For example, I believe Your Honor was involved with the

15  slaughterhouse case that came back.  It was a donning and

16  doffing case involving slaughterhouses.  And Your Honor looked

17  very carefully at whether or not notice should go out and issued

18  limited notice, but not nearly the notice that was requested by

19  the plaintiff.

20         So we think that that's the issue that should be

21  addressed, and we want to get to that issue in a way that

22  doesn't prejudice anybody, and the best way to do that -- and my

23  client has given me authority to do that -- is simply to say, if

24  Your Honor -- we ask the court to consider our motion, decide

25  who should be given notice generally in this FLSA motion, and if

1  the court orders notice to those parties the court orders

2  notice, our client would be willing to reopen the 30-day period,

3  the same contractual period.  Anyone who chooses to be a part of

4  the lawsuit during that notice we're willing to regard them as

5  plaintiffs in the case because under the arbitration agreement

6  people who are already plaintiffs in the case are excluded.

7         So we think that that is the right way.  It allows the

8  court to determine issue of notice.  It allows the court to do

9  it in the right order.  It prejudices no one.

10         Now, let me address the issue of the rule 23 class

11  action because counsel will be quick to point out, I think, that

12  that doesn't address the issue of whether or not the whole class

13  should be included on an opt-out basis.  I suggest to you that

14  to the extent that issue needs to be addressed, it, again, can

15  be addressed at the time of the class certification.  Plaintiffs

16  are arguing, in essence, that the agreement is unconscionable

17  and shouldn't be enforced because it was either fraudulently

18  presented to the court -- there are any number of state

19  contractual defenses to contract formation that plaintiffs can

20  seek to litigate, and that's fine.  We think they're wrong.  We

21  think under Concepcion that's incorrect.  We think that our

22  agreement is drawn very carefully to fit within Concepcion's

23  framework, but the decision to make that decision, whether or

24  not the agreement is unconscionable across an entire class under

25  rule 23, especially in light of Dukes versus Wal-Mart, is a

1  decision that ought to be made as part of the class

2  certification process.

3          And then the final issue on issuing notice now doing

4  essentially what the court in California ordered, No. 1, there's

5  a practical difficulty.  It's a week later.  We could get notice

6  out.  We don't have a made up list like we did in the California

7  case.  I'm not saying the client couldn't get it together and

8  get it out quickly.  It probably could.  But the 30-day period

9  is -- well, it depends on when people got notice.  The first

10  people who got the agreement got it June 14th, so July 14th

11  would be the first time anybody within the 30-day period could

12  expire.

13          So I'm not sure that getting -- rushing it to get out

14  a notice right now, although the court could order it and we

15  would respond with alacrity, I'm not sure that that's preferable

16  to doing what I think is a more orderly process of deciding

17  whether or not notice should issue in this case, then issuing

18  notice to the people the court believes should receive it and,

19  as part of that process, giving whatever notice the court orders

20  with respect to the ability to opt out of the agreement.  And

21  that's essentially where my client stands.

22          Thank you, Your Honor.

23          THE COURT:  Mr. Goplerud, anything you want to add?

24          MR. GOPLERUD:  Thank you, Your Honor.

25          I guess what I really want to do is just address the

1  issue of their proposal, Your Honor.  It doesn't unring the

2  bell.  It's going to be very difficult in any circumstance to

3  unring the bell, but all they're proposing to do is continue

4  confusion to the same group of people.  There's no question that

5  waiting and having notice go out, waiting and having another

6  30-day period, people are going to continue to get these notices

7  and then who knows what's going to happen with them.  They've

8  already been -- I won't say misinformed.  There's a lack of

9  information in the agreement that they sent out to everybody.

10  It doesn't adequately describe the claims, what they're waiving.

11        So there's a lot of information that is missing, and I

12  think it's very important that that information get out to

13  people immediately.  And while I understand that there may be a

14  little difficulty in the timing of getting the names together

15  for a mailing list for this, what is not impossible is to issue

16  the same notice.

17        So thank you, Your Honor.  We would ask the court

18  enter a similar order to Judge Johnson and ask that a joint

19  corrective notice be issued immediately.

20        THE COURT:  My understanding is that the Concepcion

21  case was decided and handed down April 27th of this year.  My

22  understanding is that by June 14th Securitas has this DRP in

23  place for the first time, am I correct?

24        MR. LILLY:  That is correct, Your Honor.  That's when

25  we started to roll it out, on June 14th, yes.

1          THE COURT:  So that's a remarkable turnaround time if,

2     as I understand, Securitas is, in essence, saying that

3     Concepcion is this watershed case and all of a sudden from that

4     case all of these dispute resolution procedures and agreements

5     spring.  I will confess I'm having a hard time understanding

6     both the motives and the timing by Securitas in a case that's

7     been pending, at least in this court, for a number of months,

8     not as long as the California case, and all of a sudden now I'm

9     told that because of Concepcion all of the landscape has changed

10    and it doesn't matter whether litigation is underway and there

11    are pending motions, the Concepcion case is, in effect, a legal

12    steamroller, and that's going to guide the court.  But I haven't

13    found anything in Concepcion that guides me on what to do in

14    this set of circumstances where we have pending litigation and

15    all of a sudden, just like those odd rains in the desert, the

16    flowers bloom and here in the middle of litigation this DRP

17    blooms.

18          MR. LILLY:  Right.

19          THE COURT:  So, Mr. Lilly, help me out there.

20          MR. LILLY:  Yes, Your Honor.  What Concepcion did was

21    prior to that -- and, to some degree, it's helpful to be from

22    California where I am because it's a California rule.  Prior to

23    Concepcion --

24          THE COURT:  And I think Discover Bank was a

25    California --

1          MR. LILLY:  Yes, Discover Bank was a California

2    Supreme Court controlling authority.  It's not a clarification

3    of the law because prior to Concepcion, the law in California

4    and, as far as anyone else knew, elsewhere in the country was

5    that courts could hold that an agreement to arbitrate that

6    stipulated and required that arbitration be individual and not

7    representative was unenforceable, you can't have that, and so

8    prior to Concepcion employers were clearly, under the clear

9    established law in California, Gentry, Discover Bank, the client

10   did not have the opportunity to say, we believe we want to have

11   an arbitration remedy which is a favored -- under California

12   law, under the Federal Arbitration Act, it is a favored remedy.

13   But it was not possible for my client to say, we're going to

14   have an arbitration program, but it's going to be individual in

15   nature.

16          When Concepcion said, absolutely reversed the law,

17   it's not a clarification of the law, reversed the law and said

18   that contracts to arbitrate must be enforced according to their

19   terms that what they called a class action waiver was not

20   coercive, was not improper, was not unconscionable under any --

21   and, in fact, any law in California or any state that held

22   contrary was preempted by the Federal Arbitration Act.

23          So at that point in time -- and I can tell you, Your

24   Honor, I was there -- the company decided that it was going to

25   implement an arbitration system that, to the extent that it's

1  permitted under Concepcion, Concepcion doesn't say it's true,

2  Your Honor.  Concepcion does not address the situation of a case

3  that already exists.  That's different, except to this extent:

4  Concepcion says that agreements to arbitrate must be regarded

5  under their terms, under the terms of the contract.

6       It also says another thing.  Section 2 of the Federal

7  Arbitration Act says that an agreement to arbitrate future

8  claims and prior claims shall be enforced.  And so, therefore,

9  under Section 2 of the Federal Arbitration Act, an agreement to

10  arbitrate, a contractual agreement to arbitrate prior claims,

11  existing claims is lawful and needs to be analyzed according to

12  its contractual terms.

13       So what Your Honor is going to have to do or any court

14  dealing with this is going to have to do is they're going to

15  have to look at this term under the general laws of

16  unconscionability in a way that doesn't discriminate against it

17  because it's an arbitration provision.  And here I would make

18  the case, Your Honor, to say that this agreement may be

19  perfectly lawful, but if it gets in the way of a class action,

20  it's illegal.  That's what plaintiffs want to say.  That's the

21  argument that plaintiffs are making, that you cannot enforce a

22  contractual FAA protected arbitration agreement if it gets in

23  the way of class litigation, and that I think would discriminate

24  against the arbitrable remedy which is favored under the

25  Concepcion case.  That, Your Honor, is a different issue than

1  notice.

2         Notice -- the key case on notice is Hoffmann-LaRoche

3  as you'll recall, and you've decided and published decisions on

4  that, that what the court does there, the court is not in the

5  business and shouldn't be in the business of soliciting people

6  to join litigation.  The courts must be scrupulously neutral

7  with respect to class actions.

8         Now, we believe that the dispute resolution program,

9  which clearly identifies every lawsuit of which the company was

10  aware, the date of filing and a general description of the

11  subject matter within the total scope of a nationwide agreement,

12  was appropriate, fair notice.  Judge Johnson wanted more.  Judge

13  Johnson ordered more.  I understand that.  That's an issue of

14  notice and, Your Honor, that's the question Your Honor has

15  today.

16         I would suggest to Your Honor that the best approach

17  would be an approach where notice -- the court keeps control

18  over the notice program as part of the FLSA conditional

19  certification regime.  Your Honor will look at the motion for

20  conditional certification.  Your Honor will decide who, if

21  anybody, should receive notice in this case, and if they do,

22  they'll have actually more rights to opt out than the contract

23  would permit.  The company is willing to extend to include that

24  as part of the notice procedure.  In that way I don't think

25  that's confusing because the notice that would issue would

1   address the lawsuit.  It would address the impact of the

2   arbitration agreement on the lawsuit.  So I think that that is

3   eminently practical.  It prejudices no one.  It hurts no one.

4   It preserves all rights that the parties might have.

5           THE COURT:  In your brief, Mr. Lilly, you state

6   Securitas would stipulate to additional notice and opt-out

7   opportunity provided such measures are narrowly tailored and

8   have minimal effect on the DRP's substantive terms.

9           MR. LILLY:  Yes, Your Honor.

10          THE COURT:  So tell me about the additional notice and

11  opt out opportunity that you envision that would be acceptable

12  under your --

13          MR. LILLY:  Yes, Your Honor.  We described it in the

14  papers.  What my client would agree to is that the court would

15  go on and decide the issue of class certification, and once we

16  have that, we'll have the two questions that need to be

17  answered; should any notice issue and, if so, to whom.  Once

18  that is decided, then the court will order a notice.  That

19  notice not only would address the FLSA, as any FLSA collective

20  conditional certification notice would, it would also indicate

21  that as part of this notice program, the company is providing an

22  additional 30 days for parties who are interested in joining the

23  litigation.  If the parties choose to accept that and take that

24  notice, then they would be regarded as existing parties in this

25  litigation, which is already a provision in the DRP.

1           THE COURT:  Mr. Goplerud?

2           MR. GOPLERUD:  Your Honor, I don't know what to say

3   other than to keep mentioning the same thing.  I think the issue

4   preclusion fits, you know, identically, and I would be happy to

5   give the court that citation for easy reference, and it's Pool

6   versus Orkin, Inc.  The Westlaw cite is 2010 WL5452712, Southern

7   District of Iowa.  Judge Jarvey found offensive issue

8   preclusion, and I won't recite the elements that I'm sure the

9   court is well aware.

10          The second thing I would like to address is, again,

11  the confusion of waiting for a time period for the court to

12  determine is notice going to be issued for them to, let's see,

13  if they need to opt into ours, but they need to opt out of their

14  arbitration.  All we're doing is creating more confusion instead

15  of clarifying things immediately.

16          Finally, if I may -- may I approach the bench, Your

17  Honor?  I've got an exhibit I would like to give to the court.

18  I would like to have it marked.

19          THE COURT:  Does opposing counsel have a copy?

20          MR. LILLY:  No.

21          MR. GOPLERUD:  I would be happy to give it to you.

22          Further confusion has been brought to our attention.

23          Your Honor, I think further confusion is what I

24  understand -- and, Your Honor, I can't profess to know this

25  well; it was only brought to my attention late last night --

1   that on Securitas's payroll web site that there's also language

2   to the effect that, quote, effective immediately all Securitas

3   USA employees are subject to mandatory binding arbitration.

4           Your Honor, I think it's just further confusion to

5   people who may or may not have even received this dispute

6   resolution program.  I think something has to be done

7   immediately because regardless -- let's say the court later does

8   conditionally certify the class for purposes of 216(b) notice.

9   Notice will go out, and now we're having a class of people

10  that -- of thousands of potential opt-ins that have already

11  received a DRP, believe they've waived their rights because they

12  didn't opt out, or go to the payroll web site and, well, I don't

13  know what this court notice is, every time I go to check my

14  payroll, it just reminds me that I'm subject to binding

15  arbitration.

16          MR. LILLY:  Well, my response, this is the first time

17  I've seen this, but, quite obviously, what this says can't be a

18  surprise to anybody.  This agreement simply says that the

19  arbitration provision doesn't apply with respect to unionized

20  guards and, of course, that's true, they all have collective

21  bargaining agreements typically with arbitration provisions.  I

22  don't think that causes any confusion.  I, frankly, think the

23  exhibit itself causes confusion.

24          Let me address the issue of, as counsel describes it,

25  as offensive collateral estoppel.  The court could order what

1   Judge Johnson ordered last week, which would be notice to every

2   employee in Iowa and Wisconsin that they have seven days left to

3   opt out of an agreement or that they have -- reminding them that

4   they have 30 days since from the time they got the agreement.

5   That would be confusing.  It would give -- it is a far inferior

6   remedy to dealing with the notice in an orderly process in which

7   everyone is -- where we have the opportunity to send the notice

8   only to the people the judge has said should be a part of the

9   case, where we can address the issue of the arbitration

10  agreement.

11        We maintain, our client sincerely believes that

12  arbitration is a better remedy than class litigation.  It is

13  cheap.  It is fast.  There are two cases in California that have

14  been going on for two years.  No one has gotten a penny.  Under

15  a dispute resolution system, an employee can make a claim in

16  arbitration, they can be paid in virtually in no time.

17        THE COURT:  Or not paid.

18        MR. LILLY:  If they're not entitled.  Arbitration is,

19  under federal law, a favored remedy.  And so to somehow impair

20  that remedy and say you cannot impose it is, again, I think -- I

21  think that AT&T, that would be a violation of AT&T, and I think

22  sending out a notice now so that a bunch of people get letters

23  that say, "You've got an arbitration agreement, don't forget to

24  exercise your right to opt out" does very little in comparison

25  to what the defense has offered.

1        MR. GOPLERUD:  Your Honor, if I may?

2        THE COURT:  You may.

3        MR. GOPLERUD:  I just realized that we're talking

4   about two different things.  I'm not talking about the

5   substantive arbitration agreement, whether or not it's

6   enforceable or not, whether or not Concepcion applies.  Your

7   Honor, what this is -- you know, only because Judge Johnson said

8   it well, so I'm not going to try and state it better -- this

9   court has a duty to oversee communication with class members.

10  That's what this is about.  And as Judge Johnson said, this is

11  an end around the court.  Nobody was given any notice, you

12  weren't given any notice, we weren't given any notice, and here

13  this went out to pending litigation.  And, you know, I come back

14  to Bublitz.  Maybe the other remedy that was addressed in

15  Bublitz if there's no joint notice, than maybe Securitas is

16  happy to give us that contact information of all of the people

17  that it's affected and we'll take it upon ourselves in the next

18  seven days to advise them of their rights to the putative class

19  members, and that's another way to address it.  If he says that

20  notice can't get out, we'll take that list of people as, I think

21  it was Judge Pratt who ordered to provide names and contact

22  information of the putative members, create rule 23

23  certification, we'll take it upon ourselves; but something has

24  to be done because this is inappropriate, we believe,

25  communication with putative class members.

1          MR. LILLY:  Well, I mean, that does address the notice

2  issue, and that's an entirely different test.  It is

3  Hoffmann-LaRoche.  It is the Eighth Circuit case that we cited

4  in our papers.  And where counsel has forthrightly, and I

5  appreciate it, conceded there was nothing incorrect about any of

6  the communications that Securitas engaged in with its parties,

7  what they want to do is say more to the parties, and I don't

8  think that the court should issue such notice because I don't

9  think the court can make findings that there's anything

10  inappropriate by the company responding to a Supreme Court

11  controlling decision and offering an arbitration program,

12  imposing an arbitration program, particularly with an opt-out

13  provision.  It wasn't required to even include an opt-out

14  provision at all, but it did so because we want to make sure

15  that the arbitration system is voluntary.  And so I just see

16  sending out, you know, seven days of additional notice makes no

17  sense when compared with a remedy that will be specifically

18  tailored to the parties the court believes should receive the

19  notice.

20          THE COURT:  My conceptual problem, Mr. Lilly, is your

21  comment about your client's response to a Supreme Court

22  decision.  What I've been troubled about since this came up last

23  week and as I've read these papers is that it seems to me your

24  client has created a problem where one didn't exist, and that's

25  what I'm having to work through.

1          MR. LILLY:  In what way, Your Honor?

2          THE COURT:  Well, we're in the midst of litigation.

3   You didn't have a DRP.  All of a sudden a case that's decided

4   now six weeks or so ago, certainly makes some changes in the

5   landscape in terms of the Supreme Court's view of dispute

6   resolution and arbitration and all of those things, and in the

7   midst of this, while we're preparing for actions in this case

8   now we have an overlay of this DRP.  And while the Supreme Court

9   case says what it says, it didn't say, "and all of you employers

10  who don't have a DRP, you better do it right now because

11  otherwise you're going to waive some right."  It didn't say

12  that, and it also didn't say, "Oh, and, by the way, if you're in

13  litigation, go ahead and do that because that will certainly

14  help the trial courts weed their way out of this."

15          So I'm just very troubled by why all of this has been

16  dumped right now where I didn't see an emergency.  I mean, the

17  court was, I thought, handling this in an orderly manner.  I

18  didn't see any prejudice, frankly, to either the putative

19  collective action members or class action members and certainly

20  I didn't see any prejudice that was arising as to Securitas.  So

21  I'm troubled by all of that.

22          MR. LILLY:  Troubled by the very decision to

23  promulgate a dispute resolution program?

24          THE COURT:  Exactly.

25          MR. LILLY:  So what Your Honor is saying is that

1  because Securitas would have to wait until all class

2  certification ends before implementing such a program?

3          THE COURT:  No, I don't think it would have to do that

4  necessarily, but I'm not certain, because I don't know and am

5  not privy to all and would never be privy to all of the

6  attorney-client discussions and the timing, but there certainly

7  are aspects of this that make this appear somewhat disingenuous

8  to me.

9          MR. LILLY:  Well, Your Honor, let me make the case

10  that it's not.

11          THE COURT:  All right.

12          MR. LILLY:  In this case the fundamental point is

13  there was a change in the law.  Prior to Concepcion it was

14  settled law in California that you could not have an arbitration

15  policy unless you allowed class actions in the arbitration

16  policy.  It was a door that was slammed shut.  It wasn't a crack

17  open.  The California Supreme Court had definitively ruled on

18  that.  Then Concepcion says, I change that rule.  That rule is

19  barred by the Federal Arbitration Act.  It's preempted by the

20  Federal Arbitration Act.  We now have a new right that

21  existed -- that didn't exist the day before the Supreme Court

22  issued this landmark case.

23          THE COURT:  In California.

24          MR. LILLY:  Well, it didn't -- that's right, but a

25  large segment of its class action litigation was in California.

1  In fact, most of it had been in California.

2          THE COURT:  Okay.

3          MR. LILLY:  And there was no definitive statement from

4  the United States Supreme Court.  In fact, the Supreme Court, it

5  was a little bit unclear in a case called Green Tree Financial

6  versus Bazzle, another United States Supreme Court case.  The

7  Supreme Court had ruled that whether or not an arbitration

8  agreement could proceed as a class was a decision the arbitrator

9  was going to make, and so that left it virtually -- it left it

10 absolutely impossible to have a company wide policy that said we

11 will have individual resolution of employment disputes.

12          Once that happened, once the Supreme Court changed the

13 law -- and I think it's beyond dispute that it's a change in the

14 law -- then the company is faced with the choice of when.  If

15 you decide that this is a good -- that you want to take

16 advantage, that you want to take advantage of the protections

17 allowed by the Federal Arbitration Act, you want to allow a

18 dispute resolution program that allows for individual, quick,

19 free and fair resolution of disputes, then when do you do it?

20 And for a company that's nationwide in scope, that has

21 litigation from time to time, all the time, it's simply

22 impossible for Securitas or any company to say, we're going to

23 wait until all of the class actions are gone and then we're

24 going to go into arbitration.  And so what Securitas did is what

25 the Supreme Court says it can do.  It is going to implement a

1   change in policy that's contractual in nature, and we are going

2   to ask you to enforce that policy, its substantive terms just as

3   the Supreme Court has permitted.  And it did not do it with any

4   notion of disrespect to the court or its process.  It did not do

5   it in, for example, the case cited in plaintiff's papers, a

6   credit card case, where they sent out an arbitration notice and

7   didn't even mention existing litigation.  They issued the notice

8   very frankly saying that this agreement is intended to be

9   enforceable to the fullest extent permissible under the Federal

10  Arbitration Act.

11          I think that's responsible, Your Honor.  I understand

12  that judges looking at this, Judge Johnson, yourself, Your

13  Honor, are very concerned with the effect on existing litigation

14  and it presents problems and new issues that weren't there

15  before, but I don't think that that means that this is -- well,

16  for example, in the case cited by plaintiff, the currency --

17  I've forgotten the name, but it's a currency transaction case.

18  I have it here, but the district court held that the company was

19  perfectly free to change its policy as long as it doesn't

20  interfere with the integrity of this litigation.  And I think

21  that rule is different now under Concepcion.  I think that the

22  parties have a contractual right, and Your Honor, every court

23  dealing with the arbitration program will apply the law under

24  Concepcion and eventually make decisions as to whether or not

25  the agreement should be enforced, whether -- if someone who

1   comes in who's subject to the agreement and we move, for

2   example, to compel arbitration, Your Honor will decide whether

3   or not that case should be compelled to arbitration.  All of

4   those decisions, all of those substantive decisions can be made.

5   In fact, the agreement itself says that no employee will be

6   retaliated against for challenging the validity of the

7   arbitration agreement.

8           So we're not trying to evade the substantive rights.

9   All we are trying to do is change policies that Iowa law and

10  Wisconsin's law permits.  Both permit the company to change its

11  policies with employees and continued employment in

12  consideration for that exchange.  We think we're right.  We

13  think we have the right to do that; but if the court disagrees,

14  there will be an appropriate time to make that ruling.  Now is

15  not the time.

16          THE COURT:  Mr. Goplerud, anything you want to add?

17          MR. GOPLERUD:  Nothing further, Your Honor.

18          THE COURT:  All right.  I'll have a ruling shortly.

19          MR. LILLY:  Thank you, Your Honor.

20          MR. GOPLERUD:  Thank you, Your Honor.

21          THE COURT:  Thank you.  I appreciate you being here.

22          We'll be in recess.

23          Thank you.

24          (Proceedings concluded at 9:46 a.m.)

25

1                        C E R T I F I C A T E

2              I, the undersigned, a Certified Shorthand Reporter of

3    the State of Iowa, do hereby certify that I acted as the

4    official court reporter at the hearing in the above-entitled

5    matter at the time and place indicated.

6              That I took in shorthand all of the proceedings had at

7    the said time and place and that said shorthand notes were

8    reduced to computer transcription under my direction and

9    supervision, and that the foregoing computer transcription pages

10   are a full and complete transcript of the shorthand notes so

11   taken.

12             Dated at Des Moines, Iowa, this 11th day of July,

13   2011.

14

15

16

17                        /s/ Terri L. Martin
                          CERTIFIED SHORTHAND REPORTER
18

19

20

21

22

23

24

25