IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA (CENTRAL)

```
-------------------------------------------------------------:
JESSIE J. MOLYNEUX, et al.                     :    Civ. No. 4:10-cv-00588-JAJ-TJS
,                                              :
              Plaintiffs,                      :
                                               :
      v.                                       :
                                               :
SECURITAS SECURITY SERVICES USA INC.           :
                                               :
              Defendant.                       :
-------------------------------------------------------------:
```

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF THE**
**SETTLEMENT AND DISMISSING THE CASE**

## I.      INTRODUCTION

The Court should grant final approval of the Parties' Settlement Agreement because it is fair, reasonable and adequate under the governing legal standards and provides full relief to the Participating Class Members.

## II.      FACTUAL BACKGROUND

### A.      The Parties

Securitas provides security officer services to a wide variety of clients in many different settings throughout Iowa and Wisconsin.  Plaintiff Jessie Molyneux was employed by Securitas in Iowa and Plaintiff John Stellmach was employed by Securitas in Wisconsin.

### B.      Procedural History

On or about December 9, 2010, Named Plaintiffs Jesse Molyneux and John Stellmach filed the Complaint in this matter, alleging that they and others whom they sought to represent were required to work off-the-clock during their employment with Defendant in connection with new hire orientation, other training, shift changes, and uniform maintenance in violation of the Fair Labor Standards Act, 29 U.S.C. §§206, 207 and Iowa and Wisconsin wage and hour law, Iowa Code, §91A et seq., and Wisc. Stat. §109.03 and Wisc. Admin. Code DWD §§272, 274.

Between May and September 2011, eleven individuals filed notices of consent to opt in to the case:  Sherry Swanson, Jared Sommerfelt, Irenn Johnson, Charlie Dixson, Nigel Duncan-Adam, Penny Hill, Gary Norks, Adam Vandenburg, Jodie Vazquez, Eric Gosselink, and Charlene Walker (Docket Nos. 27, 67, 76, 79, 83, and 90), bringing the total number of opt-ins to 13, including the 2 Named Plaintiffs.

On September 20, 2011, the Court ruled on Plaintiffs' motion for conditional certification, certifying only Plaintiffs' new hire orientation claim (Docket No. 96).  The Court

ordered notice to be sent to putative collective action members informing them of their right to opt in to the lawsuit.

During the opt-in period, 124 additional individuals opted into the Lawsuit (Docket Nos. 100-119), bringing the total number of opts ins to 137 ("FLSA Participating Class Members"), including the 2 Named Plaintiffs.   In their notices of consent to opt in filed with the Court, all of the opt ins gave consent to Plaintiffs' counsel to settle this matter on their behalf.

With the claims so narrowed, the Parties began to engage in settlement discussions.  On or about May 11, 2012, the parties reached a settlement based on the format of a settlement reached in a similar case pending in the Eastern District of Pennsylvania at the conclusion of a day-long mediation at JAMS Philadelphia with Hon. Diane Welch.

### C.     Discovery and Investigation Regarding Claims Alleged

In the course of this action and in preparation for settlement discussions, the Parties conducted significant investigation of the facts and law regarding the new hire orientation claim and the claims of the Named Plaintiffs, including:  (a) the exchange of information pursuant to formal and informal discovery, (b) interviews of potential witnesses, (c) review of personnel, payroll and training records and Securitas' policies and procedures, (d) extensive production of electronically stored information by Defendant, and (e) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims in the Action.

### D.     The Parties Dispute Whether New Hire Orientation Was Compensable.

During the time period at issue, Defendant alleges its new hire orientation was the last phase of its process for screening security officer applicants.   The orientation consisted of instructional videos, handling hazardous materials, and in some instances, safe driving; multiple choice tests to assess the individual's comprehension of the material; the state-mandated

fingerprinting process; filling out paperwork; and being issued uniform items, amongst other things.

Plaintiffs claim that new hire orientation was compensable time under the FLSA and Iowa and Wisconsin wage and hour law, and should have been paid.  Plaintiffs further argue that the failure to pay for the time prior to January 2010 caused their wages to fall below minimum wage or pushed them into overtime (which was not paid) during the workweek at issue. Defendant disputes that it was required to pay individuals for new hire orientation under the applicable FLSA regulations and governing state law.  Defendant argues the process of watching instructional videos, being tested on them and filling out paperwork was the final part of Securitas' screening process – an important part, as being a security officer involves sitting for long periods, being able to concentrate and be alert without falling asleep, and filling out reports and forms accurately. Defendant claims the fingerprinting portion was state-mandated and was required to work in the industry, and was thus not for the benefit of the employer and not compensable.  *E.g.* WH Opinion Letter, 1997 WL 998038 (Sept. 15, 1997) (state-mandated training to obtain insurance agent license was for the benefit of the employee and not compensable).  Defendant argues the time that it took to issue individuals uniforms was *de minimis*.

E.      **The Monetary Terms Of The Parties' Settlement.**

The Parties recognized that the attorney's fees and costs that would be involved to continue litigating whether new hire orientation was compensable exceeded what it would cost to pay the full value of the time spent in the new hire orientation by the Class Members. Accordingly, in order to avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement totaling $240,000, which was memorialized in the Stipulation of Settlement submitted with the Parties' Motion for

Preliminary Approval.  The Settlement consists of payment of back wages to Participating Class Members (which could be as many as 798 individuals) totaling $55,000; payments to the two Named Plaintiffs ($5,000 each) and the six individuals who filed declarations in support of conditional certification ($1,666.66 each) totaling $20,000; and a payment to Plaintiffs' attorneys for fees and costs in the amount of $165,000.  The Parties arrived at these amounts through arms-length negotiation based on underlying data exchanged, as follows:

### 1.    Back Wages ($55,000 to Class Members)

Back wages were computed by multiplying (the number of class members)  x  (the number of estimated hours spent in new hire orientation)  x  (the average minimum wage in effect at that time) x (2 for FLSA liquidated damages, which exceeds state penalties):  798 class members x 4.99 hours x $6.90 x 2 = $54,952.  Unclaimed individual settlement payments will revert to Class Members and be distributed on a pro-rata basis.

### a.    Final Number of Class Members (795)

Initial review of Defendant's records showed that 798 individuals were hired, and thus attended new hire orientation, in Iowa and Wisconsin between November 28, 2008 and December 31, 2009 (after which, Securitas began paying for new hire orientation).  Upon further review, the list was found to include 3 erroneous entries, resulting in a total of 795 individuals.

### b.    Hours In New Hire Orientation (4.99 hours)

Because Securitas did not consider the time spent in new hire orientation to be compensable, it did not record the hours spent in training or pay for those hours.  However, according to branch office personnel who ran the orientation and analysis of payroll records for the post-January 2010 period when Securitas began paying for the new hire orientation, the entire session took approximately 5 hours.  This was the approximate number of hours used to resolve the case.

### c.       Pay Rate For New Hire Orientation (Minimum Wage)

Under the FLSA, the Company's legal obligation is to pay minimum wage for all hours worked in any given workweek and to pay overtime for any hours over 40.   The average minimum wage in effect during the relevant time period was $6.90.   Because the time spent in new hire orientation was not recorded or paid prior to January 2010, the actual date of any given Class Member's new hire orientation can only be pinpointed by pulling his or her personnel file to find the date on which certain new hire paperwork was filled out and signed.   Unfortunately, the date cannot be ascertained by reference to data in any company database.   The cost of locating, pulling and reviewing nearly 800 personnel files was prohibitive relative to the value of the claims at stake.

Accordingly, the Parties agreed that a fair compromise position for both the minimum wage and overtime claims was to pay the full minimum wage in effect at the time of hire for approximately 5 hours to all who attended new hire orientation during the statutory period.   By offering minimum wage to all, many who would have otherwise received nothing or just a few dollars to gross them up to minimum wage (because their wage rate was high enough above minimum wage to cause no minimum wage violation when the extra time is added) will receive something more substantial.

### d.       Liquidated Damages (100% of Back Wages)

Liquidated damages are computed as 100% of back wages.   29 U.S.C. §216(b) (liquidated damages are "an additional equal amount" of unpaid minimum wages or unpaid overtime compensation).  This exceeds the state law penalties.

### 2.       Payments to Two Named Plaintiffs and Six Declarants ($20,000)

The second element of the Parties' settlement is payment to the Named Plaintiffs ($5,000 each) and the six individuals ($1,666.66 each) who submitted declarations in support of

conditional certification.   Courts may make separate awards to class representatives in recognition of their risks, time expended, and benefits to the class. *See In Re US Bancorp Litig.*, 291 F.3d 1035, 1037 (8th Cir. 2002), cert. denied 537 U.S. 823 (2002); *White*, 822 F. Supp. at 1406.

The role of the Named Plaintiffs and six declarants in this litigation was crucial.  Each sacrificed their time to prosecute this lawsuit on behalf of their fellow current and former employees.  Each reviewed and approved the Complaint.  Each met, conferred and corresponded with Plaintiffs' counsel on a regular basis.  Each submitted to extensive interviews, produced records and documents, or provided invaluable information and assistance to Plaintiffs' Counsel without which they could not have brought this matter to a successful conclusion.  The payments to these individuals consist of payment for any claims that they may have against Defendant and their work on behalf of the class.

### 3.      Plaintiff's Attorneys' Fees and Costs ($165,000).

The Parties vigorously contested the portion of Plaintiff's attorney's fees that should be paid under the settlement.   In the end, after hours and rates were provided and intense negotiation, the Parties agreed to $165,000 in attorney's fees, subject to Court approval. The Parties believe that this is a fair compromise. As part of the Final Approval process, Plaintiffs are submitting their motion for attorney's fees not to exceed $165,000.00 under separate cover.

### F.      Procedural Elements of Settlement

As part of the settlement, the Parties prepared the Stipulation of Settlement, which was filed with the Court with the following exhibits:  Notice of Settlement, Opt-Out Claim Form and Waiver of Attorney's Liens.  The Parties also arrived at stipulations, set forth in the Stipulation of Settlement, that each of the elements of Rule 23 are met with respect to the state law new hire orientation claim and agreed that that claim should be certified for purposes of this settlement.

On August 21, 2012, the Court granted the Parties' Motion for Preliminary Approval, and approved the notice and claim form to be sent to the class.  (Docket No. 133).  The Court set the Final Approval Hearing for November 5, 2012 at 1:30 p.m.

### G.      After Notice No Objections Were Received.

As detailed in the Declaration of the Claims Administrator filed herewith, the Notice of Settlement and Claim form was sent to the class within 10 days of the Court's Order granting preliminary approval.  (Bui Decl., ¶ 7).  The Claims Administrator processed the responses as provided for in the Stipulation of Settlement approved by the Court, including skip tracing and re-mailing undeliverable notices.  Ultimately, of the 795 notices, 34 notices were undeliverable because the Claims Administrator was unable to find a current address.  (*Id.*, ¶¶ 5-8).

In response, of the 761 class members located, nine individuals (1%) submitted valid forms opting out of the settlement.  Three additional opt-out forms were returned but found to be deficient and have not been cured. Counsel for the parties submit that these three individuals should be included in the settlement.  No one submitted an objection to the terms of the settlement.  (*Id.*, ¶¶ 9-10).  Accordingly, 99% of the 761 class members located will participate in the settlement.

The Claims Administrator has computed payments to be made to the Class, and established a fund out of which the payments will be made following final approval of the settlement.  (*Id.*, ¶ 12 & Ex. C (Ex. C to be provided by way of supplementation when final computations are completed)).  Securitas will make the payments to the named Plaintiffs and Plaintiffs' attorneys directly.

## III.   LEGAL AUTHORITY

### A.   The Court Should Approve The Settlement Of Plaintiffs' State Law Claims Under F.R.C.P. 23(e) Because It Is Fair, Reasonable And Adequate.

Rule 23(e) of the Federal Rules of Civil Procedure requires that cases brought as class actions may only be settled, compromised or dismissed upon a court finding that it is "fair, reasonable and adequate."   Fed. R. Civ. P. 23(e).   Generally, court approval of a proposed class action settlement is accomplished in a two-step process.   First, the parties submit the proposed terms of the settlement and the court makes a preliminary evaluation of fairness.   Second, if the preliminary evaluation of the proposed settlement does not disclose ground to doubt the basic fairness of the proposed settlement or other obvious deficiencies, the court should direct notice be given to the class members of the formal fairness hearing, at which time arguments and evidence may be presented in support of or in opposition to the proposed settlement.   NEWBERG ON CLASS ACTIONS, §11.25 (4th ed. 2002); MANUAL FOR COMPLEX LITIGATION, § 30.41 (3rd ed.).

In assessing whether a settlement is fair, reasonable and adequate, courts within the Eighth Circuit generally consider:   (1) the merits of the plaintiff's case, weighed against the settlement terms; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.   *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988)).

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."   *Bullock v. Administrator of Estate of Kircher*, 26 F.R.D. 1, 26 (D.N.J. 1979); *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).   In sum, courts approach class action

settlements "with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (quoting *Little Rock Sch. Dist. v. Pulaski Co. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should also keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotations omitted).

Here, the Parties Settlement is fair, reasonable and adequate under the governing multi-factor test:

1. The settlement is fair, reasonable and adequate given the merits of the case weighed against the settlement terms. The settlement provides full recovery to the Class Members without the risks inherent in continuing what would prove to be lengthy litigation and the possibility that Defendant would prevail on its arguments that new hire orientation was not compensable time.

2. The settlement is fair, reasonable and adequate given the financial condition of Defendant. Defendant is agreeing to provide full recovery on the new hire orientation claim in exchange for a release, and no discount was taken to reflect the financial condition of Defendant.

3. The settlement is fair, reasonable, and adequate given the complexity and expense of further litigation because the Parties agree that the cost of continuing litigation will far exceed the $55,000 value of the claims at issue (which amount is being paid under the settlement). The attorneys' fees portion of the settlement is reasonable given the results obtained, the hours spent, and the rates previously approved by this Court.

4.   The settlement is fair, reasonable and adequate as reflected by the fact that no class member filed an opposition to the settlement.  In addition, the nine individuals who opted not to participate in this settlement, and the 34 individuals who could not be located, will be excluded from the settlement and the final order.

In sum, the settlement is within the range of reasonableness in light of the best possible recovery.  For all of these reasons, the Court should grant final approval of the settlement of the state law new hire orientation claim under Rule 23(e).

**B.     The Court Should Also Approve The Settlement Of Plaintiffs' FLSA Claim Because The Settlement Is Fair And Reasonable.**

An employee may compromise a claim under the FLSA pursuant to a court-authorized settlement of an action alleging a violation of the FLSA.  *E.g. Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  With respect to a court-authorized settlement, the court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Id.*  If a settlement in an employee FLSA suit reflects "a reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation."  *Id.* at 1354.

In determining whether a settlement is fair and reasonable, courts have considered factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, Case No. 6:06-cv-435-Orl-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d

1527, 1531 n. 6 (11th Cir. 1994)); *see also Trinh v. JPMorgan Chase & Co.*, Case No. 07-CV-01666 W(WMC), 2009 WL 532556 (S.D. Cal. March 3, 2009).   "When considering these factors, the Court should keep in mind the 'strong presumption' in favor of finding a settlement fair."   *King*, 2007 WL 737575, *3 (*quoting Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).   Moreover, "a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'"   *King*, 2007 WL 737575 *3 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (other internal citations omitted)).

The Parties' settlement is fair and reasonable and meets all of the factors considered by courts:

1. The settlement was not fraudulent or collusive.   The settlement was the result of a highly contested, arms-length negotiation.   The terms of the settlement represent a true compromise by both sides:   it provides complete relief to the Class Members, including full liquidated damages and penalties, and required Plaintiffs' counsel to take a significant discount on their attorneys' fees.

2. The settlement appropriately factored in the complexity, risk, expense, and likely duration of the litigation.   The Parties recognized that dollar value exposure for back wages on the new hire orientation claim was far less than the attorney's fees that would be required to litigate the claim.   Plaintiffs also recognized the risks inherent in proceeding with the litigation in light of Defendants' arguments on the merits of the claim.

3. The settlement was appropriate at this stage of the proceedings and given the amount of discovery completed.   Defendant provided videos, agendas and other documents regarding the content of new hire orientation and extensive electronically stored information, produced payroll

records showing the number of individuals hired and their first week of pay during the Class Period, and also produced timesheets and payroll records demonstrating the hours paid for new hire orientation beginning on January 1, 2010.   The Parties thus had all of the information necessary to assess the compensability of new hire orientation program during the relevant time period, as well as the possible exposure for back pay.

4.   In Defendant's view, the settlement overly estimates the strength of the plaintiff's case and the probability of success on the merits; however, Defendant was able to negotiate an appropriate discount on Plaintiffs' attorney's fees and, by settling, was able to avoid incurring additional defense fees and costs.

5.   The settlement covers the range of possible recovery.   The payments to the Class Members make them whole, and include liquidated damages and penalties.

6.   Attorneys for the Parties, who are experienced in wage and hour collective and class actions, believe that settlement is fair and reasonable.

For all of these reasons, the Parties jointly request the Court grant final approval of the Settlement Agreement.

## IV.   CONCLUSION

The Parties respectfully request that this Court grant their motion for final approval and enter an order dismissing the case as to all parties and class members, with prejudice provided, however, that the order shall not operate as a release of claims or otherwise affect any rights of the nine individuals who opted out of the settlement, or of the 34 individuals who could not be located.

Dated:  November 1, 2012

PLAINTIFFS

By:     /s/ Ryan F. Stephan
        /s/ J. Barton Goplerud
J. Barton Goplerud
Ryan E. Weese
Jenna L. Green
Hudson Mallaney Shindler & Anderson, PC
5015 Grand Ridge Dr., Suite 100
West Des Moines, Iowa 50265
(515) 223-4567
jbgoplerud@hudsonlaw.net
rweese@hudsonlaw.net
jgreen@hudsonlaw.net

Ryan F. Stephan
James B. Zouras
Andrew C. Ficzko
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
aficzko@stephanzouras.com

Jon A. Tostrud
Tostrud Law Group, P.C.
1901 Avenue of the Stars, 2nd Floor
Los Angeles, CA  90067.
(310) 461-1620
jtostrud@tostrudlaw.com

Eric P. Blank
Blank Law & Technology P.S.
157 Yesler Way, Third Floor
Seattle, WA 98104
TEL: 206.256.9699
FAX: 206.256.9899
eblank@digital-legal.com

ATTORNEYS FOR PLAINTIFFS

DEFENDANT

By:     /s/ Daniel B. Boatright
        /s/ Kellie A. Garrett
        /s/ Denise K. Drake
Denise K. Drake, IA Bar #20146
Daniel B. Boatright, Missouri Bar #38803
*Admitted  pro hac vice*
Kellie A. Garrett, Missouri Bar #60062
*Admitted  pro hac vice*
Littler Mendelson, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO  64106
Telephone: 816.627.4406
Facsimile: 816.817.6125
ddrake@littler.com
dboatright@littler.com
kgarrett@littler.com

Martha Keon, Pennsylvania Bar #207237
*Admitted pro hac vice*
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Telephone: 267.402.3000
Facsimile: 267.402.3131
mkeon@littler.com

Kevin Lilly, California Bar #119981
*Admitted pro hac vice*
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: 310.553.0308
Facsimile: 310.553.5583
klilly@littler.com

ATTORNEYS FOR DEFENDANT